## ZAMECKI *v.* ZAMECKI

[No. 285, September Term, 1961.]

*Decided May 21, 1962.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Marion A. Figinski* for appellant.

*Carl H. Lehmann, Jr.,* with whom was *Standley L. Richardson* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant was divorced, *a mensa et thoro,* from the appellee on June 15, 1960, and awarded permanent alimony in the amount of $90.00 a week. On May 22, 1961, the appellee filed a petition requesting a reduction in the alimony, due to "drastic" changes in the financial conditions of the parties. On November 1, 1961, after a full hearing on appellee's petition, the chancellor reduced the amount of alimony to $75.00 a week. Later, on December 1st, another decree was signed requiring the appellee to advance the costs of this appeal, which included an item of $100 as an attorney's fee for the wife's counsel. The appellant challenges the correctness of the decree of November 1st, insofar as it reduced her alimony, and the decree of December 1st in allowing her counsel only $100 for prosecuting this appeal.

The appellee is a dentist, who, at the time of the divorce, was living in Baltimore. The parties are mature people with adult children, but no dependent ones. At the time of their divorce, they owned two pieces of real estate as tenants by the entireties: one a residential property known as 4102 Loch Raven Boulevard; the other, 336 S. Patterson Park Avenue. The latter contained rentable quarters and also the appellee's dental offices. On March 23, 1961, the parties entered into a separation agreement, wherein it was agreed that the wife would obtain the residence in fee, and the husband would obtain the Patterson Park Avenue property in fee. This agreement contained a provision which stated: "It is fully agreed and understood * * * that [this agreement] shall not in any way effect [sic] the permanent alimony decreed to" the appellant. The wife also obtained practically all of the personal property in the home.

The appellee's 1960 income tax return showed a net income to him of some $4,200 after paying $3,585 to the appellant as alimony.

When the parties were divorced, all of the wife's bills were paid, including a tax bill of $700 on the Loch Raven Boulevard property, where she was residing. At or about that time, she received the sum of $5,000 as the result of a settlement for personal injuries resulting from a motor vehicle accident. She retained insurance policies on the appellee's life having cash surrender values of $7,500. The husband testified that he had about $35,000 invested in the Loch Raven Boulevard property and about $23,000 in 336 S. Patterson Park Avenue. After the divorce, the wife sold her residential property and bought a smaller home, whereby she netted about $9,000 in cash and reduced her taxes by about $350 a year. At the time of the hearing below, the appellee's financial condition was as follows. After the divorce, he had sold his dental practice in Baltimore, and moved to New York State. The business was sold in May, 1961. He received $4,500 for it and some dental equipment. $500 was paid in cash, and the balance was payable at the rate of $100 a month. He had bought a home in New York for $19,000, paying $10,000 of the purchase price in cash. He had obtained his New York license, and had rented an office there, which was then ready for occupancy. However, the only income that he had received since June of 1961 was the $100 a month payment for the sale of his business and an additional $185 a month for rentals from 336 S. Patterson Park Avenue. He testified that he had obtained $17,000 from the proceeds of an insurance policy, and, out of this $17,000, he had made the down payment of $10,000 on his house and had paid his living expenses and the excess over his income of appellant's alimony. Very little of the $17,000 was left.

The chancellor was justified, we think, in making the reduction he did. If we briefly summarize the above evidence, it shows that the wife has her residence free and clear of encumbrances, and some $21,500 in cash. Under the chancellor's decree, she receives $325 a month as alimony. On the other hand, the husband has a $10,000 equity in his present home, which has a $9,000 encumbrance thereon. He pays rent for his office. His only income is $285 a month, plus whatever he makes from his profession in a new locality. Under these cir-

cumstances, we will not disturb the chancellor's ruling on the question of alimony. As stated by the chancellor: "Should there be a change in the [financial] condition of the [appellee] after he opens his place of business, and it is brought to the attention of this court that his income has increased to an extent which will justify an increase to the complainant, this order * * * may be reopened."

Appellant's counsel laid great stress on the provision in the separation agreement quoted above. We think it is clear that this provision pointed out that the separation agreement, itself, was not intended to affect the alimony granted the wife, but nowhere in the quoted part of the agreement (nor in the whole agreement) do we find any intention to limit the chancellor's right to reduce or to raise the amount of alimony decreed. It will be noted, of course, that the husband did not bind himself, in the agreement, to pay alimony at the rate of $90 a week.

The appellant also requested the chancellor to enjoin the appellee from "absconding or leaving this State," unless he first posted bond as security for the payment of her alimony. This, the chancellor refused to do, pointing out that appellee had never failed to meet his alimony payments, and had shown no disposition to conceal himself or his assets. Again we agree.

However, we think the chancellor was slightly "parsimonious" when he awarded appellant's counsel only $100 for prosecuting this appeal. Counsel on both sides have displayed ability, care and zeal in presenting the appeal. We will therefore, modify the decree of December 1st, so as to provide for a fee of $250 to appellant's counsel.

*Decree of November 1, 1961, affirmed. Decree of December 1, 1961, modified, and, as modified, affirmed. Appellee to pay the costs.*